DAVIS | MILES
ATTORNEYS AT LAW
999 East Playa del Norte Drive, Suite 510
Tempe, Arizona 85288
Telephone: (480) 733-6800
Facsimile: (480) 733-3748
www.davismiles.com
efile.dockets@davismiles.com
David Williams, State Bar No. 22764
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel R. Schulz,<br><br>Plaintiff,<br><br>vs.<br><br>Caliber Fitness, Inc., a New York corporation,<br><br>Defendants. | **Case No. CV-24-01151-PHX-SMM**<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Daniel R. Schulz, through his undersigned counsel, hereby submits the following as his First Amended Complaint against Defendants:

**<u>PARTIES, JURISDICTION AND VENUE</u>**

1. Plaintiff Daniel R. Schulz ("Plaintiff" or "Mr. Schulz") is a resident of Maricopa County, Arizona.

2. Defendant Caliber Fitness, Inc. ("Defendant" or "Caliber") is a New York corporation that has directed its activities to the State of Arizona.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is properly before this Court pursuant to 28 U.S.C. § 1397 because the actions giving rise to this Complaint occurred within this Judicial District.

## ALLEGATIONS COMMON TO ALL COUNTS

5. Caliber is a fitness and personal training company that offers personalized online fitness and nutrition coaching for Caliber clients. As part of its services, Caliber provides customized and personal training and fitness programs for its subscriber-clients in addition to personal online coaching services.

6. Jared Cluff is the President and Chief Executive Office of Caliber.

7. Upon information and belief, in order to expand its subscriber and customer base, Caliber, through its owner Mr. Cluff, sought outside investments and financing from private investors and individuals, such as Mr. Schulz.

8. Caliber intended to raise additional capital through "angel investors" and the issuance of a series of Simple Agreements of Future Equity ("SAFE").

9. As part of its campaign to solicit additional investment and financing, on December 9, 2022, Mr. Cluff met with a group of prospective investors, including Mr. Schulz at Canyon Angels meeting at Grand Canyon University.

10. On December 21, 2022, Mr. Cluff had a subsequent follow-up Zoom-based meeting with Mr. Schulz.

11. During the meetings in December of 2022, and in subsequent communications between Mr. Cluff and Mr. Schulz, in order to induce an initial investment from Mr. Schulz via the SAFE, Mr. Cluff made certain representations regarding Caliber's financial viability, performance and plans, and that after obtaining the targeted outside financing, it would be in a position to expand its business operations and increase its overall profitability.

12. During the December 9, 2022 meeting attended by Mr. Schulz and other prospective investors, Mr. Cluff made false representations about the financial status of Caliber when he stated that Caliber had achieved certain revenue bench marks in 2022 and that Caliber would only need a one time additional capital raise of One Million Dollars, and

that no further capital raises would be needed before an eventual equity conversion for those investors that participated in the One Million Dollar capital raise.

13. Upon information and belief, based upon Caliber's financial status during the December 9, 2022 meeting, Mr. Cluff knew that a One Million Dollars capital raise was insufficient, and he failed to disclose to prospective investors that he intended to conduct a second capital raise after raising the $1 million, rather than starting an equity conversion process.

14. Prior to Mr. Schulz's initial investment (including during the aforementioned meetings), Mr. Cluff, on behalf of Caliber, during the December 2022 meeting at Grand Canyon University and in direct communications after the meeting, specifically represented to Mr. Schulz that (1) there would be an Equity Financing (as defined under the SAFEs) occur by the end of June of 2023, but no later than the end of the calendar year 2023; (2) the Equity Financing would be at a valuation of Fifty Million Dollars ($50,000,000.00) and that Caliber was in discussions with outside firms about raising such financing; and (3) there would be no need to raise further capital subsequent to the Subject Offering and prior to such Equity Financing, as Caliber instead would streamline expenses and control growth pending generation of revenues sufficient for an Equity Financing.

15. These particular representations by Caliber to Mr. Schulz were material representations as Mr. Schulz does not normally invest in SAFEs as an investment vehicle due to the lack of equity opportunities. It was the particular opportunity to gain equity in Caliber and obtain a stated return on his investment that made the SAFEs offered by Caliber of particular interest to Mr. Schulz.

16. Mr. Cluff's representations made during the December 9, 2022 meeting and follow-up conversations with Mr. Schulz were false because Mr. Cluff made different statements about Caliber's financial status and the intended capital raise in September 2022 to a different group of investors.

17. In September 2022, Mr. Cluff provided information to Vincent Serpico, another prospective investor, that contained financial data on Caliber's financial condition at that time. Based upon Caliber's supposed financial condition in September 2022, Mr. Cluff represented that Caliber would require a $500,000 capital raise (rather than a $1 million capital raise), and that an Equity Financing would occur in April 2023.

18. Mr. Cluff again falsely represented that due to the financial condition of Caliber as of September 2022, a capital raise of $500,000 would only needed before an Equity Financing would occur. Based on the differing financial information provided by Mr. Cluff, he had a present intent to simply conduct additional capital raises without disclosing to prospective investors the true financial condition of Caliber's business operations and that there would be no Equity Financing before a second round capital raise.

19. As part of its attempt to raise additional capital, on or about January 19, 2023, Caliber issued a Simple Agreement for Future Equity ("SAFE") to Mr. Schulz in exchange for an investment of One Hundred Thousand Dollars ($100,000.00).

20. On or about January 19, 2023, Caliber issued a second SAFE to Mr. Schulz in exchange for an investment of Fifty Thousand Dollars ($50,000.00).

21. The two SAFEs contain identical substantive provisions, with the sole exception being the amount invested by Mr. Schulz.

22. The two SAFEs were part of a capital raise by Caliber, as the issuer of a securities offering to investors and prospective investors in multiple states (the "Subject Offering").

23. Each of the SAFEs provide for a Post-Money Valuation Cap of Twenty Million Dollars ($20,000,000.00) and a Discount Rate of eighty percent (80%).

24. Each of the SAFEs provide that in the event of an "Equity Financing," upon the initial close of such Equity Financing, each SAFE would convert automatically into the number of shares of "Safe Preferred Stock" equal to the "Purchase Amount" divided by the "Conversion Price."

25. In turn, each of the SAFEs define "Equity Financing" as "a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which [Caliber] issues and sells Preferred Stock at a fixed valuation, including but not limited to, a pre-money or post-money valuation."

26. Meanwhile, each of the SAFEs define "Safe Preferred Stock" as "shares of the series of Preferred Stock issued to the Investor in an Equity Financing, having the identical rights, privileges, preferences and restrictions as the shares of Standard Preferred Stock, other than with respect to: '(i) the per share liquidation preference and the initial conversion price for purposes of price-based anti-dilution protection, which will equal the Conversion Price; and (ii) the basis for any dividend rights, which will be based on the Conversion Price.'"

27. In such contact, each of the SAFEs define "Conversion Price" as "either (1) the Safe Price or (2) the Discount Price, whichever calculation results in a greater number of shares of Safe Preferred Stock."

28. In turn, each of the SAFEs define "Discount Price" as "the price per share of the Standard Preferred Stock sold in the Equity Financing multiplied by the [80%] Discount Rate."

29. Further, each of the SAFEs define "Safe Price" as "the price per share equal to the [USD $20,000,000] Post-Money Valuation Cap divided by the Company Capitalization."

30. The "Purchase Amount" under each of the SAFEs is the amount invested by each Investor, in this case Mr. Schulz.

31. As indicated in the SAFEs, the Subject Offering was a private placement offering made pursuant to Section 4(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77d(a)(2), and United States Securities and Exchange Commission ("SEC") Regulation D, 17 CFR §§ 230.500 *et seq*.

32. Meanwhile, upon information and belief, contrary to such representations made by Mr. Cluff in December 2022, subsequent to the Subject Offering, Caliber issued a second round offering of similar SAFEs to certain other investors, not including Mr. Schulz and at least certain others investing in the Subject Offering, except that the SAFEs in such down-round offering provided for a Post-Money Valuation Cap of Ten Million Dollars ($10,000,000.00), which is half of that provided in the Subject Offering.

33. Accordingly, upon information and belief, the financial disclosures of Caliber's financial status in December of 2022 and made by Caliber in connection with the Subject Offering to Mr. Schulz significantly overstated the value, financial viability, and projected financial performance of Caliber, as well as the value of the SAFEs, while significantly understating, and/or failing to disclose material information, regarding the risks of investment in Caliber and the SAFEs.

34. The future value of any equity and stock conversion in Caliber for Mr. Schulz was also devalued because Caliber offered a Post-Money Valuation Cap of Ten Million Dollars in the second round SAFEs. In a future Equity Financing, those investors that participated in the second round SAFEs will received higher percentage and proportion of shares in Caliber than those investors, like Mr. Schulz who participated in the first round of SAFEs.

35. Mr. Cluff failed to disclose he intended to conduct a second round of SAFEs and that the second round SAFEs would have a value of half of that of the Subject Offering. Such information was material to Mr. Schulz because he would never participated in the first round of SAFEs if he knew he would only obtain a lesser percentage of shares in Caliber than those in a later, second round of SAFEs.

36. No explanation has been provided for such significant difference in Post-Money Valuation Cap between the Subject Offering and the second down-round offering or for the lack of an Equity Financing by the end of the calendar year 2023.

37. When Mr. Schulz broached the subject of such down-round offering with Caliber, certain representatives of Caliber offered Mr. Schulz the opportunity to participate in the down-round offering.

38. When Mr. Schulz requested financial disclosures and access to review Caliber's corporate books and records in order to evaluate the merits of investing in the down-round offering, Caliber refused to provide such financial disclosures and refused or otherwise failed to verify in writing Calber's offer for Mr. Schulz to participate in the down-round offering.

39. Accordingly, on or about December 5, 2023, in correspondence directed to Caliber's counsel, Mr. Schulz's counsel, among other things, made a demand that Mr. Schulz either receive copies of, or else be afforded access to inspect and make copies and extracts from, Caliber's stock ledger and a list of Caliber's stock holders, as well as certain books and records of Caliber, each redacted to protect confidentiality regarding identities and contact information of other investors.

40. In response to such demand, on or about December 20, 2023, Caliber, through its counsel, refused to provide any copies of or access to any such books and records.

41. In its December 20, 2023 response, Caliber, through counsel, expressed the position that it was not required to file a Form D with the SEC or any other exemption notice in connection with the Subject Offering.

42. Upon information and belief, not all investors and prospective investors in the Subject Offering were "accredited investors" as defined in SEC Regulation D, Rule 501(a), 17 CFR § 230.501(a).

43. In any event, even if all investors and prospective investors in the Subject Offering were "accredited investors," Mr. Schulz was not given access, to his satisfaction, to the type of information and documentation normally provided in a prospectus for a registered securities offering, including without limitation that information referenced in §§

10(a)(1), 10(c) and 27 of the Securities Act of 1933 (15 U.S.C. §§ 77j(a)(1), 77j(c) and 77aa) and SEC Rules 408, 421 and 427 (17 CFR §§ 230.408, 230.421 and 230.427).

44. As such, Caliber is not entitled to express the position that it was not required to file a Form D with the SEC or any other exemption notice in connection with the Subject Offering.

45. Meanwhile, in the December 20, 2023 correspondence from its counsel, Caliber admitted that no Equity Financing had occurred by the end of 2023.

46. Accordingly, on or about December 29, 2023, Mr. Schulz's counsel sent additional correspondence and again, reiterated demands for proper financial disclosures and copies of or access to review and inspect the books and records referenced in Mr. Schulz's earlier correspondence dated December 5, 2023.

47. Caliber has refused or otherwise failed to provide to Mr. Schulz any further financial information or documentation, or any copies of or access to any of Caliber's books and records in relation to the Subject Offering, including without limitation the value of the SAFEs and of Caliber, the financial condition and viability of Caliber, and the financial plans and projections of Caliber.

**COUNT ONE**
**(Declaratory Relief)**

48. Plaintiff realleges and fully incorporates herein by reference all prior allegations set forth in the preceding paragraphs of the First Amended Complaint.

49. As set forth above, there is an actual and justiciable controversy between the parties with respect to Caliber's agreement because the SAFE provides that each SAFE would convert automatically into the number of shares of "Safe Preferred Stock" upon the initial close of Equity Financing (as defined by the SAFE), and Caliber failed to disclose that it would conduct a second round of SAFEs with a Post-Cap Valuation of Ten Million Dollars, which would devalue Mr. Schulz's future equity position in Caliber.

50. Plaintiff maintains that the only reason he entered into the SAFE was due to Caliber's specific agreement and representations that the Equity Financing would close by the end of 2023; the Equity Financing would be at a valuation of Fifty Million Dollars ($50,000,000.00); and that there would be no need to raise additional capital prior to the Equity Financing.

51. Plaintiff is entitled to declaratory judgment pursuant to the provisions of Ariz. Rev. Stat. § 12-1831, *et. seq.,* declaring that Mr. Schulz's SAFE has a Post-Cap Valuation of Ten Million Dollars and will be treated on the same conversion terms in a future Equity Financing as the second round of SAFEs.

52. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties.

**COUNT TWO**
**(Fraudulent Inducement)**

53. Plaintiff realleges and fully incorporates herein by reference all prior allegations set forth in the preceding paragraphs of the First Amended Complaint.

54. As set forth in the preceding paragraphs, Defendant, through Mr. Cluff, falsely represented that (1) Caliber's revenues were on a steep incline and that Caliber could reduce spending and become profitable at any point; (2) the investment would help expand marketing and increase revenues improving profitability; (3) there would be an Equity Financing (as defined under the SAFEs) occur by the end of June of 2023, but no later than the end of the calendar year 2023; (4) the Equity Financing would be at a valuation of Fifty Million Dollars ($50,000,000.00) and that Caliber was in discussions with outside firms about raising such financing; and (5) there would be no need to raise further capital subsequent to the Subject Offering and prior to such Equity Financing, as Caliber instead

would streamline expenses and control growth pending generation of revenues sufficient for an Equity Financing.

55. Defendant knew that its representations set forth above were false, and that such information would be material to Plaintiff in agreeing to enter into the SAFEs.

56. Defendant intended Plaintiff to rely upon such representations in deciding to enter into the SAFEs.

57. Plaintiff did not know the representations made by Defendant were false.

58. Plaintiff justifiably and reasonably relied upon the misrepresentations in deciding to enter into the SAFEs.

59. In making the representations, Defendant knew that the false information and representations and conduct would or were likely to cause significant damage to Plaintiff.

60. As a result of Defendant's false representations, Plaintiff suffered damages in an amount to be proven at trial.

61. Defendant's actions as described above demonstrate that such actions were intentional, wanton, and reckless and showed ill will and demonstrated a reckless indifference and disregard for the rights of and owed to Plaintiff and that such actions were outrageous and malicious so as to entitle Plaintiff to an award of punitive damages against Defendant.

**COUNT THREE**
**(Fraudulent Nondisclosure)**

62. Plaintiff realleges and fully incorporates herein by reference all prior allegations set forth in the preceding paragraphs of the First Amended Complaint.

63. As set forth in the preceding paragraphs, the Defendant failed to disclose that Defendant intended to issue a second round offering of similar SAFEs to certain other investors, not including Mr. Schulz and at least certain others investing in the Subject Offering, except that the SAFEs in such second round offering provided for a Post-Money

Valuation Cap of Ten Million Dollars, which is half of that provided in the Subject Offering.

64. Defendant knew that the information concerning a second round capital raise was material to Mr. Schulz, and that information provided about the financial condition of Caliber was false and misleading, and that such information would be material to Plaintiff in deciding to enter into the SAFEs in the first round capital raise.

65. Defendant intended Plaintiff to rely upon their misleading statements and nondisclosed information in deciding to enter into the SAFEs.

66. Plaintiffs did not know that Defendant's representations were false, and Plaintiffs were not aware of the materially important and undisclosed information concerning the financial status of Caliber.

67. Plaintiffs justifiably and reasonably relied upon the misrepresentations and undisclosed information in deciding to enter into the SAFEs.

68. In making the representations, Defendant knew that the false information and representations and conduct would or were likely to cause significant damage to Plaintiff.

69. As a result of Defendant's false representations and failure to disclose material information, Plaintiff suffered damages in an amount to be proven at trial.

70. Defendant's actions as described above demonstrate that such actions were intentional, wanton, and reckless and showed ill will and demonstrated a reckless indifference and disregard for the rights of and owed to Plaintiff and that such actions were outrageous and malicious so as to entitle Plaintiff to an award of punitive damages against Defendant.

**COUNT FOUR**
**(Negligent Misrepresentation)**

71. Plaintiff realleges and fully incorporates herein by reference all prior allegations set forth in the preceding paragraphs of the First Amended Complaint.

72. As set forth in the preceding paragraphs, Defendant falsely represented to Plaintiff that (1) Caliber's revenues were on a steep incline and that Caliber could reduce spending and become profitable at any point; (2) the investment would help expand marketing and increase revenues improving profitability; (3) there would be an Equity Financing (as defined under the SAFEs) occur by the end of June of 2023, but no later than the end of the calendar year 2023; (4) the Equity Financing would be at a valuation of Fifty Million Dollars ($50,000,000.00) and that Caliber was in discussions with outside firms about raising such financing; and (5) there would be no need to raise further capital subsequent to the Subject Offering and prior to such Equity Financing, as Caliber instead would streamline expenses and control growth pending generation of revenues sufficient for an Equity Financing.

73. Defendant knew that its representations set forth above were false, and that such information would be material to Plaintiff in agreeing to enter into the SAFEs.

74. Defendant intended Plaintiff to rely upon such representations in deciding to enter into the SAFEs.

75. Defendant was negligent in making the representations and providing the false information to Plaintiff.

76. Under the circumstances, Plaintiff was justified in relying upon the Defendant's representations.

77. As a proximate result of Defendant's representations, Plaintiff suffered damages in an amount to be proven at trial.

78. Defendant's actions as described above demonstrate that such actions were intentional, wanton, and reckless and showed ill will and demonstrated a reckless indifference and disregard for the rights of and owed to Plaintiff and that such actions were outrageous and malicious so as to entitle Plaintiff to an award of punitive damages against Defendant.

**COUNT FIVE**
**(Securities Fraud Pursuant to the Arizona Securities Act)**

79. Plaintiff realleges and fully incorporates herein by reference all prior allegations set forth in the preceding paragraphs of the First Amended Complaint.

80. Defendant enticed Plaintiff to enter into the SAFEs. Defendant's sale of the interests in the SAFEs constitutes a security under Ariz. Rev. Stat. § 44-1801(26).

81. As set forth in the preceding paragraphs, pursuant to Ariz. Rev. Stat. § 44-1991(2), Defendant made an untrue statement of a material fact in connection with the investment in the SAFEs. Such material, untrue statements include, but are not limited to, (1) Caliber's revenues were on a steep incline and that Caliber could reduce spending and become profitable at any point; (2) the investment would help expand marketing and increase revenues improving profitability; (3) there would be an Equity Financing (as defined under the SAFEs) occur by the end of June of 2023, but no later than the end of the calendar year 2023; (4) the Equity Financing would be at a valuation of Fifty Million Dollars ($50,000,000.00) and that Caliber was in discussions with outside firms about raising such financing; and (5) there would be no need to raise further capital subsequent to the Subject Offering and prior to such Equity Financing, as Caliber instead would streamline expenses and control growth pending generation of revenues sufficient for an Equity Financing.

82. Similarly, Defendant failed to disclose certain material facts related to the transaction, including that Defendant intended to issue a second round offering of similar SAFEs to certain other investors, not including Mr. Schulz and at least certain others investing in the Subject Offering, except that the SAFEs in such second round offering provided for a Post-Money Valuation Cap of Ten Million Dollars ($10,000,000.00), which is half of that provided in the Subject Offering.

83. Defendant knew that its representations were untrue and were material to the Plaintiff in deciding to enter into the SAFEs.

84. Plaintiff did not know the representations made by Defendant were false.

85. Pursuant to Ariz. Rev. Stat. § 44-1991(1), Defendant's actions set forth above and in the preceding paragraphs also constitute the use of a device, scheme, or artifice to defraud the Plaintiff and other investors.

86. Pursuant to Ariz. Rev. Stat. § 44-2003, Plaintiff is entitled recover the monies paid to Defendant for the entry into the SAFEs, interest at the available legal rate from the date of the purchase to enter into the SAFEs, costs, and their reasonable attorneys' fees.

87. Pursuant to Rule 38, Fed. R. Civ. P., Plaintiff requests a trial by jury on all counts set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

A. For a declaratory judgment requiring as outlined above;

B. For an award of compensatory, general, and special damages, and other damages in an amount to be determined at trial;

C. For an award of punitive damages and treble damages in an amount to be determined at trial;

D. All reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Ariz. Rev. Stat. § 12-341.01 in an amount not less than $5,000.00.

E. For post-judgment interest on all applicable amounts, at the highest legal rate; and

F. For such other and further relief as the Court deems just and appropriate.

DATED this 27th day of June 2024.

**DAVIS MILES, PLLC**

By:/s/David W. Williams
David Williams
999 E. Playa del Norte Dr., Ste 510
Tempe, AZ 85288
*Attorneys for Plaintiff*

## VERIFICATION

I, Daniel R. Schulz, am the Plaintiff in the above-entitled action. I have read the foregoing pleading and know the contents thereof. The matters stated herein are true and accurate to the best of my knowledge, except such matters stated to be upon information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of June 2024

Daniel R. Schulz

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2024, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Samantha J. Burke
David A. Perez
**Perkins Coie LLP**
2525 East Camelback Road, Suite 500
Phoenix, AZ 85016
dperez@perkinscoie.com
sburke@perkinscoie.com
docketPHX@perkinscoie.com
*Counsel for Defendant*

/Stephanie DeBuhr